UNITED STATES of America, Plaintiff,

v.

William W. DOWNEY, Defendant, and

William L. Guild, as Attorney General of Illinois, and J. Waldo Ackerman, as State's Attorney of Sangamon County, Illinois, Intervening Petitioners.

Crim. No. 5923.

United States District Court
S. D. Illinois, S. D.
April 14, 1961.

Harlington Wood, Jr., U. S. Atty., Springfield, Ill., for plaintiff.

James B. Martin, Springfield, Ill., for defendant.

POOS, District Judge.

William L. Guild, as Attorney General of Illinois, and J. Waldo Ackerman as State's Attorney of Sangamon County, Illinois, intervened here and filed a motion for disclosure of Grand Jury proceedings, and in the motion asked for a disclosure pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and in support of the motion, alleged:

(1) That the disclosure is requested for the use in the performance of their duties by the Attorney General of Illinois and the State's Attorney of Sangamon County, Illinois.

(2) That the ends of justice require disclosure.

This motion was filed on September 7, 1960. On November 28, 1960, a supporting affidavit was filed. The affidavit states that J. Waldo Ackerman is the duly elected State's Attorney for Sangamon County, Illinois, and sets out his statutory duties which provide that he is required to commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in any court of record in Sangamon County, Illinois; and that he attend all sessions of the Sangamon County Grand Jury, and present to it evidence of all criminal violations that occur in Sangamon County, Illinois. The affidavit further sets out that it is the duty of the Attorney General under Paragraph 4, Chapter 14, Illinois Revised Statutes:

"to consult with and advise the several State's Attorneys in matters relating to the duties of their office;

and when, in his judgment, the interest of the people of the State requires it, he shall attend the trial of any party accused of crime, and assist in the prosecution. * * * ",

and that the purpose of the motion is to review the Grand Jury proceedings and to present any and all such matters revealed to a duly constituted Grand Jury of Sangamon County if it appears from such disclosures that a crime against the people of the State of Illinois has been perpetrated.

William W. Downey, on the hearing of this motion, was represented by counsel, and both the Attorney General and the State's Attorney appeared by their assistants.

Federal Rule of Criminal Procedure 6 (e) on which the motion is based, is as follows:

"Disclosure of matters occurring before the Grand Jury other than its deliberations, and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the Grand Jury only when so directed by the Court preliminarily to, or in connection with a judicial proceeding, or when permitted by the Court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. * * * "

The defendant was indicted in this proceeding for evasion of income taxes for the years 1953, 1954, 1955 and 1956, by an indictment returned March 11, 1960. Later, on September 1, 1960, the defendant pleaded guilty and was sentenced.

Factually it appears from the record that William W. Downey, defendant, was, during the taxable years in question, an employee of the State of Illinois as a Secretary in the Governor's Office. The Attorney General and the State's Attorney concede that he had nothing to do with Illinois State moneys or funds. On the argument of the motion, no facts were stated by these officers that would even tend to show the violation by defendant of any criminal statute or law of Illinois.

It does not appear from the affidavit of J. Waldo Ackerman that he has knowledge of any facts that would warrant him as State's Attorney to make a presentment to a State Grand Jury of violation of any criminal law of Illinois; nor does the court know, or is the court advised of any facts by hearsay or otherwise that would disclose the violation of any criminal statute of Illinois.

The movants take the position that they, since the adoption of Rule 6(e), and as provided under the first sentence of the Rule, are such "attorneys for the government" as entitles them to have the stenographic grand jury transcribed evidence for use in the performance of their duties. They say that since the adoption of the Rule 6(e), with the approval of Congress, there is no longer secrecy of matters occurring before federal grand juries, and that previous rules no longer prevail.

An investigation of this question discloses that the grand jury is provided for under the Fifth Amendment to the Constitution, which provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *."

The grand jury thus referred to in this amendment has to do with indictments for violation of criminal laws of the United States, and not with criminal offenses against the laws of a State. Section 6(e) is a part of the Federal Rules of Criminal Procedure. These rules were provided for by the Act of February 24, 1933, c. 119, 47 Stat. 904, as amended by the Act of June 29, 1940, c. 445, 54 Stat. 688. The amended Act is as follows:

"The Supreme Court of the United States shall have the power to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings prior to and including verdict, or finding of guilty or not guilty by the court if a jury has been waived, or plea of guilty, in criminal cases in district courts of the United States. * * *

"Such rules shall not take effect until they have been reported to Congress by the Attorney General at or after the beginning of a regular session thereof, and until after the close of such session, and thereafter all laws in conflict therewith shall be of no further force and effect." (Act of June 29, 1940, c. 445, 54 Stat. 688, U.S.C. Title 18, Sec. 687, now Sec. 3771).

The rules were prepared under the following order of the Supreme Court entered February 13, 1941, which, among other things, provided,

"It is ordered:

"(1) Pursuant to the Act of June 29, 1940, (Public, No. 675, 76th Congress), the Court will undertake the preparation of rules of pleading, practice, and procedure with respect to proceedings prior to and including verdict, or findings of guilty or not guilty, in criminal cases in the district courts of the United States.

"(2) To assist the Court in this undertaking, the Court appoints the following Advisory Committee to serve without compensation * * *

"(3) It shall be the duty of the Advisory Committee, subject to the instructions of the Court, to prepare and submit to the Court a draft of rules as above described. * * *"

Under the above Acts of Congress, and Order of the Court, the rules were prepared, submitted to and approved by the Court, and became effective three months after adjournment of the first regular session of the 79th Congress, as provided in Rule 59, which further provides:

"They govern all criminal proceedings thereafter commenced and so far as just and practicable all proceedings then pending."

Rule 1 provides:

"These rules govern the procedure in the Courts of the United States and before United States Commissioners in all criminal proceedings, with the exceptions stated in Rule 54."

Rule 60 provides:

"These rules may be known and cited as the Federal Rules of Criminal Procedure."

■ It is apparent from reading these rules above quoted that all proceedings intended or mentioned therein refer to the proceedings in the courts of the United States, and none other. The words in the first sentence of Rule 6(e), "to the attorneys for the government for use in the performance of their duties", clearly are intended to and could only mean attorneys for the United States Government, and not the attorneys of any county or state government. The words of the second sentence, "otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding", clearly are intended to and could only mean in connection with a judicial proceeding in a United States Court.

This exact question was before the court in United States v. Crolich, D.C., 101 F.Supp. 782, where the court said, at page 784:

"The phrase 'preliminarily to, or in connection with a judicial proceeding', contemplates a proceeding in a District Court which would necessitate the disclosure of matters occurring before a grand jury impaneled by that court. There is no proceeding pending in this court which would justify such action * * *."

In this case the motion was that testimony before grand jury concerning il-

legal action of election officials be made known to a County Board charged with the duty of appointing election officials.

█ If this were not true, and if Congress or the United States Supreme Court could make rules for criminal procedure in the State courts, then one would have to disregard the provisions of Article IV, Sec. 4 of the Constitution of the United States, which provides:

"The United States shall guarantee to every State in this Union a Republican Form of Government * * *."

A republican form of government includes the right to have a system of state courts. The rule is aptly stated in 11 Am.Jur., Sec. 174, page 870, as follows:

"Among the matters which are implied in the Federal Constitution, although not expressed therein, is that the National Government may not, in the exercise of its powers, prevent a state from discharging its ordinary functions of government. This corresponds to the prohibition that no state can interfere with the free and unembarrassed exercise by the Federal Government of all powers conferred upon it. In other words, the two governments, national and state, are each to exercise its powers so as not to interfere with the free and full exercise of the powers of the other."

This authority cites in support thereof, Education Films Corp. v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400; Carlesi v. People of State of New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843; State of South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261; Metcalf v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384; and others.

█ The only power that this court has, whether discretionary or mandatory, comes from the Constitution of the United States, laws enacted by Congress, and the Federal Rules of Criminal Procedure.

█ It has been pointed out above that the movants are not such officers as

are contemplated by the Federal Rule of Criminal Procedure 6(e), because these rules are intended to govern, and only govern, the United States Courts and the Attorneys of the United States in the performance of their duties.

The movants further advance the theory that since the adoption of Rule 6 (e) there is no longer secrecy of matters occurring before federal grand juries except as provided in this rule, and that the court has discretionary power to allow the motion. They cite in support of this argument United States v. Byoir, 5 Cir., 147 F.2d 336. It is readily apparent from reading this case that the matter there involved had to do with matters in federal courts and the case is no authority concerning the secrecy of grand jury proceedings in matters outside the jurisdiction of federal courts. There the court had an undoubted legal basis under the Rule to support the exercise of discretion and the finding of the Court of Appeals was, "we find no abuse of discretion", and the Court particularly points out, at page 337,

"There may be some question as to whether the order means that disclosure by the district attorney, equally with that by the stenographer, is to wait on the ruling of Judge Leibell. We think it should be so understood, but to make it plain we modify it to say expressly that all disclosures provided in it are to be made only if and after Judge Leibell shall hold the evidence sought is relevant and admissible evidence in the proceeding pending before him."

It is not apparent from a reading of this case that the grand jury evidence was ever disclosed.

The movants take two positions, viz., (1) that secrecy of grand jury proceedings in the federal court system under Rule 6(e) no longer exists, and, (2) by reason of this Rule they are entitled to have the stenographic transcript revealed as a matter of discretionary right, without the affirmative showing of any factual necessity therefor.

In answer to these propositions, the Supreme Court of the United States has ruled contrary to the positions taken by movants. In Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323, the question was whether a district court judge had abused his discretion in refusing to permit defendants charged with conspiracy under the Sherman Act to inspect grand jury minutes under Rule 6(e) covering testimony before that body of an allegedly key government witness. It appeared at the trial, on cross-examination of the witness, that he had testified three times on "the same general subject matter." Thereupon counsel moved for the delivery of the grand jury minutes and stated that "the petitioners had 'a right * * * to inspect the Grand Jury record, of the testimony of this witness after he has completed his direct examination' relating to 'the same general subject matter' as his trial testimony." The Court in response to this said, 360 U.S. 398, 79 S.Ct. 1240.

"Petitioners concede as they must that any disclosure of grand jury minutes is covered by Fed.Rules Crim.Proc. 6(e) promulgated by this Court in 1946 after the approval of Congress. In fact, the federal trial courts, as well as the Courts of Appeals, have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle and Rule 6(e) is but declaratory of it. As recently as last term, we characterized cases where grand jury minutes are used 'to impeach a witness, to refresh his recollection, to test his credibility and the like' as instances of 'particularized need where the secrecy of the proceedings is lifted discretely and limitedly'. U. S. v. Proctor and Gamble [Co.], 1958, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077.

"Petitioners argue, however, that the trial judge's discretion under Rule 6(e) must be exercised in accordance with the rationale of Jencks; namely, upon a showing on cross-examination that a trial witness testified before the grand jury, and nothing more; the defense has a 'right' to the delivery to it of the witness' grand jury testimony. This conclusion, however, runs counter to 'a long-established policy' of secrecy, United States v. Proctor and Gamble [Co.], supra, 356 U.S. at page 681, 78 S.Ct. at page 986, older than our Nation itself. The reasons therefor are manifold, id., 356 U.S. at page 682, 78 S.Ct. at page 986, and are compelling when viewed in the light of the history and *modus operandi* of the grand jury. Its establishment in the Constitution 'as the sole method for preferring charges in serious criminal cases' indeed 'shows the high place it (holds) as an instrument of justice.' Costello v. United States, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397. Ever since this action by the Fathers, the American grand jury, like that of England, 'has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor.' Ibid. Indeed, indictments may be returned on hearsay or for that matter, even on the knowledge of the grand jurors themselves. Id. 350 U. S. at pages 362, 363, 76 S.Ct. at pages 408, 409. To make public any part of its proceedings would inevitably detract from its efficacy. Grand jurors would not act with that independence required of an accusatory and inquisitorial body. Moreover, not only would the participation of the jurors be curtailed, but testimony would be parsimonious if each witness knew that his testimony would soon be in the hands of the accused. Especially is this true in antitrust proceedings where fear of business reprisal might haunt both the grand juror and the wit-

ness. And this 'go slow' sign would continue as realistically at the time of trial as theretofore.

"It does not follow, however, that grand jury minutes should never be made available to the defense. This Court has long held that there are occasions, see United States v. Proctor and Gamble [Co.], supra, 356 U. S. at [page] 683, 78 S.Ct. at page 985, where the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial. Certainly 'disclosure is wholly proper, where the ends of justice require it'. United States v. Socony-Vacuum Oil Co., supra, 310 U.S. [150] at page 234, 60 S.Ct. [811] at page 849 [84 L.Ed. 1129].

"The burden, however, is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy. We have no such showing here."

In an earlier case, United States v. Proctor and Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077, the same rule is announced. The Court said at 356 U.S. 681, 78 S.Ct. at page 986:

"On the merits we have concluded that 'good cause', as used in Rule 34, was not established. The Government as a litigant is, of course, subject to the rules of discovery. At the same time, we start with a long-established policy that maintains the secrecy of grand jury proceedings in the federal courts. See United States v. Johnson, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546; Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L. Ed. 397. The reasons are varied. One is to encourage all witnesses to step forward and testify freely without fear of retaliation. The witnesses in antitrust suits may be employees or even officers of potential defendants, or their customers, their competitors, their suppliers. The grand jury as a public institution

might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow. This 'indispensable secrecy of grand jury proceedings,' United States v. Johnson, supra, 319 U.S. at page 513, 63 S.Ct. at page 1238, must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity.

"No such showing was made here. The relevancy and usefulness of the testimony sought were, of course, sufficiently established. If the grand jury transcript were made available, discovery through depositions, which might involve delay and substantial costs, would be avoided. Yet these showings fall short of proof that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done. * * * Only strong public policies weigh against disclosure. They were present in Hickman v. Taylor, supra [329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451], for there the information sought was in the trial notes of the opposing lawyer. They are present here because of the policy of secrecy of grand jury proceedings. We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility, and the like. Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly. We only hold that no compelling necessity has been shown for the *wholesale* discovery and production of a grand jury transcript under Rule 34. We hold that a much more particularized, more discrete showing of need is necessary to establish 'good cause' * * *."

■■ The cases adequately answer the position of movants and show (1) that Federal grand jury proceedings are

**588**

still covered with secrecy under Rule 6, (e), and (2) that movants are not entitled as a matter of court discretionary right to have the transcript until an adequate showing is made with factual reasons to justify disclosure. This record is void of any showing whatever of either factual, hearsay or even rumor that there has been a criminal violation of the laws of Illinois. If the impelling reason is so strong and is found to be absent in the two foregoing cases where the principals involved were parties to Federal court proceedings, then the necessity for showing an impelling reason is just as strong in so far as parties dehors the record are concerned. In such case as this, the Court does not have even a discretion to exercise. Quite similar is the case of United States v. Weber, 2 Cir., 197 F.2d 237. In this case motion was made at the trial for the grand jury minutes. The Court said:

> "The accompanying affidavit advanced no facts in support of the application. In denying the motion the district judge stated that in essence it was 'a fishing expedition.' * * * A mere request to inspect the minutes, without any statement of facts indicating insufficiency of the evidence, is not enough to require the court to inspect the minutes."

See also United States v. Costello, D.C., 119 F.Supp. 159, 160, where the Court said:

> "The affidavit submitted on the present application is devoid of any facts to compel the conclusion that this is one of these rare cases in which the Court should exercise its discretionary power."

■ United States v. Sugarman, D.C., 139 F.Supp. 878 is to the same effect. The cases from Supreme Court, the Courts of Appeals and the trial courts above cited are all to the effect that unless there is a factual showing made as to the necessity of disclosure, the veil of secrecy of the grand jury transcript should not be lifted in the United States Courts, and absent a showing of any facts whatsoever as in this record, the reason is just as impelling as to parties absent the record as here.

Accordingly, there being no factual basis to support the motion, and under the strength of the authorities above cited, the motion of movants is denied.