**David BOWMAN, Plaintiff,**

v.

**CITY OF INDIANAPOLIS,
et al., Defendants.**

**No. IP 91–785–C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 24, 1996.

Shannon B. Adams–Bowman, Indianapolis, Indiana, for Plaintiff.

Frederick Roetter, City–County Legal Division, Indianapolis, Indiana, for Defendants.

## ENTRY

BARKER, Chief Judge.

This matter is before the court on Plaintiff Bowman's "Limited Motion for Reconsideration", and on defendants' "Amended Second Motion for Summary Judgment." For the reasons discussed below, defendant's summary judgment motion is granted in part and denied in part, and plaintiff's motion for reconsideration is denied as moot.

## I. BACKGROUND

For the purposes of these motions, we assume familiarity with the factual background of this case, as set forth in our previous entries dated November 22, 1994, and July 5, 1995.[1] A brief summary of the case and its current procedural posture is, however, necessary to provide background for our discussion of the issues raised in the motions currently before the court.

Bowman's Fair Labor Standards Act ("FLSA") claim turns on whether he was an overtime-exempt employee under the FLSA or a non-exempt employee entitled to overtime compensation. The FLSA exempts "bona fide executive, administrative, and professional employees" from the minimum wage and overtime provisions of the Act. 29 U.S.C. § 213(a)(1). The Act does not define the term "Bona fide executive, administrative, and professional employees", but instead delegates that responsibility to the Department of Labor ("DOL"). Id. The DOL regulations, at 29 C.F.R. §§ 541 et seq., require that, in order to qualify as an overtime-exempt executive, administrative or profes-sional employee, an employee must meet both parts of a two-part test. The first part is a "duties test." The second part is a "salary test."

On November 22, 1994, this court granted partial summary judgment to the defendants. In reaching that decision, we found that from April 1986, until his assignment to the Municipal Garage in September 1988, Bowman's duties met the requirements of the duties test.[2] However, we found that with regard to Bowman's employment at the Municipal Garage from September 1988 to August 1989, there were material facts in controversy as to whether he satisfied the duties test, and so we denied summary judgment as to that period of time.

With regard to the salary test, we stated that "based on the weight of authority, were this Court to apply the 'salary test,' the reduction in Bowman's pay would make him a non-salaried, non-exempt employee," but, relying on the reasoning and analysis of Service Employee Intern. Union Local 102 v. San Diego, 35 F.3d 483, 486 (9th Cir.1994), we held that the "salary test" was invalid as applied to public sector employees. (November 22, 1994 Entry on Summary Judgment, at 8–9). Because we found that the salary test did not apply to Bowman, we concluded that defendants needed only to meet the duties test and thus granted summary judgment for the defendants on Bowman's FLSA claim as to the period of time from April 1986 to September 1988. We also dismissed Bowman's FLSA claim against the Indianapolis Police Department, Stephen Goldsmith, James Toler, James Campbell, Cicero Mukes, Richard Dorsey, and Jack Sandlin, finding that none of those defendants are "employers" under the FLSA. November 22, 1994 entry, at 12, n. 10,[3] and also granted

---

1. Defendants include in their memorandum in support of summary judgment ("Defendants' Memorandum") a "Statement of Undisputed Facts". In his response, Bowman states that defendants' facts are "anything but undisputed", and incorporates as his statement of facts, his Affidavits which were submitted to this court in 1994. Because neither party presents any factual issues that this court has not already decided, we incorporate our previous factual findings.

2. The parties both agree that from April 1986 to September 1988, Bowman met the requirements of the duties test.

3. In the initial round of summary judgment motions, defendants also asked for judgment for defendants Paul Annee and Michael Zunk, on the grounds that neither Annee nor Zunk were Bowman's "employer". In dismissing other defendants on that basis, and finding that the remaining defendants were the City of Indianapolis,

summary judgment to defendants on Bowman's Fraud claim.

On July 5, 1995, we granted Bowman's Motion to Reconsider and vacated that part of our November 22, 1994 entry granting partial summary judgment on the FLSA claim, based upon a May 15, 1995, Seventh Circuit decision upholding the validity of the salary test as applied to public employees. *See, Mueller v. Reich*, 54 F.3d 438 (7th Cir. 1995).[4]

## II. DISCUSSION

### A. Plaintiff's Motion to Reconsider

The essence of Bowman's argument is that, because we have now held that the salary test is valid as applied to public employees, and because we previously stated that if we were to apply the salary test to him, his disciplinary suspension without pay would make him a non-exempt employee entitled to overtime pay, he is entitled to partial summary judgment on his FLSA claim with regard to the time period from April 1986 to September 1988.

In *Mueller*, the Seventh Circuit stated that the salary basis regulation "defines executive, administrative, and professional employees as employees who receive a salary as distinct from an hourly wage—provided ... that they are not subject to having *less than a week's pay* docked for a disciplinary infraction that is not the breach of a major safety regulation." 54 F.3d at 440. (emphasis added). *Mueller* made clear that "all [the salary basis test] prevents is suspensions without pay *for less than a week.*" *Id.,* at 443. Bowman was actually suspended without pay for six months, and would not be considered a non-exempt employee by virtue of that suspension. However, an employee is non-exempt, and thus entitled to overtime pay, if he

is "subject to" reduction in pay for less than a week, even if no such deduction was ever made. *See, Klein v. Rush–Presbyterian–St. Lukes Medical Center*, 990 F.2d 279, 286 (7th Cir.1993). Defendants concede that the City of Indianapolis Police Merit Law provides for suspension without pay for up to six months as a permissible form of discipline for all police officers, and that Bowman was therefore subject to suspensions without pay for less than a week. (Defendants' Memorandum at 21); Indianapolis Code, § 3–319(b), (d)(2). Thus, if we were to apply the salary test to Bowman, we would grant his request and enter summary judgment for him on his FLSA claim with regard to the time period beginning in April 1986 and ending in September 1988. However, we must first consider the several new challenges to the salary test and to the FLSA which defendants raise in their Amended Motion for Summary Judgment.

### B. Defendants' Motion for Summary Judgment

Defendants raise several challenges to both the FLSA and to the disciplinary component of the salary test. Specifically, defendants argue that (1) the FLSA as applied to police officers is an unwarranted invasion of state sovereignty in violation of Article IV, § 4, The Guarantee Clause of the U.S. Constitution; (2) the disciplinary component of the salary test is unconstitutional as it exceeds the power of Congress to regulate Commerce; (3) and the disciplinary component of the salary test, as applied to both public and private employees, is arbitrary and capricious, and contrary to Congressional intent, in violation of the Administrative Procedure Act. Each of these challenges will be addressed in turn.

---

Annee and Zunk, we implicitly rejected Defendant's argument that Annee and Zunk were not "employers" under the FLSA. In this second round of summary judgment motions, the Defendants again ask us to dismiss Annee and Zunk on the grounds that they were not Bowman's "employer". We have already decided that issue and will not re-visit it now.

4. Our entry of July 5, 1995, only vacated that part of our November 22, 1994, entry granting

partial summary judgment on the FLSA claim. Therefore, those parts of our November 22, 1995, entry dismissing IPD, Goldsmith, Toler, Campbell, Mukes, Dorsey and Sandlin, and granting summary judgment to defendants on the fraud claim remain unaffected by our July 5, 1995, entry. Accordingly, to the extent that Defendants renew their motion for summary judgment on these two issues, their motion is **denied as moot.**

## 1. Guarantee Clause

■ The gravamen of defendants' Guarantee Clause argument is that "[f]ederal intervention in the wages paid and hours worked by police officers interferes with a state or local government's ability to set both the qualifications and number of police officers available to enforce its laws," and is thus "legislation regulating the *enforcement* of [state] laws." (Defendants' Memorandum, at 12). As a preliminary matter, we note that it is unclear whether defendants' Guarantee Clause argument is even justiciable. *See, New York v. U.S.*, 505 U.S. 144, 184, 112 S.Ct. 2408, 2433, 120 L.Ed.2d 120 (1992). (suggesting that some, but not all Guarantee Clause claims present nonjusticiable political questions). However, even assuming that defendants' Guarantee Clause argument is justiciable, it is without merit.

Defendants do not contend that the Guarantee Clause forbids all federal involvement in the regulation of state employment. Rather, they argue that because police officers exercise law enforcement powers, and law enforcement is a critical component of a republican form of government, Congress cannot regulate the wages or hours of police officers. Defendants' conclusion does not flow logically from their premise. We do not dispute that police officers exercise a power, the power of law enforcement, that is of critical importance to state government, and that states must be able to enact, implement and enforce laws without being beholden to Washington. However, regulation of wages and hours of police officers is not regulation or limitation of the state's law enforcement powers. Neither does it, as defendants contend, influence the qualifications and number of police officers a state or local government may employ. The only caselaw defendants offer in support of their argument is lan-

guage from the District Court opinion in *Mueller*, in which the court stated that application of the DOL's salary test regulation to public employees might frustrate the Constitution's promise to secure a republican form of government. *See, Mueller v. Thompson*, 858 F.Supp. 885, 893–94 (E.D.Wis.1994), *reversed, Mueller v. Reich*, 54 F.3d 438 (7th Cir.1995).[5] The Seventh Circuit expressly rejected the reasoning of the District Court on which defendants rely, holding that

> [b]ecause the rule barring such suspensions does not impose an insuperable obstacle to states' bringing their executive, administrative, and professional employees within the exemption—all the states have to do is to delete this form of discipline from their arsenals of disciplinary remedies—*we do not think there is merit to the district judge's suggestion that to subject the states to the rule violates the constitutional guarantee to each state of a republican form of government.*

*Mueller*, 54 F.3d at 443 (emphasis added).[6]

We find that there is nothing about the application of the FLSA's minimum wage and hour requirements to police officers that prevents the people of a state from voting for government officials of their choice, nor does it require the state to enforce its laws in any particular way, nor does it influence the state or city's ability to set the qualifications and numbers of its police officers. In short, the application of the FLSA to police officers is not destructive of state sovereignty and does not violate the Guarantee Clause. *See, Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 553, 105 S.Ct. 1005, 1019, 83 L.Ed.2d 1016 (1985) ("we perceive nothing in the overtime and minimum-wage requirement of the FLSA, as applied to (metropolitan transit authority) that is destructive of state sovereignty or violative of any constitu-

---

5. The *Mueller* District Court did not suggest that the application of the FLSA itself to public employers, or to police officers, was a violation of the Guarantee Clause.

6. The other cases upon which defendants rely do not even involve the wage and hour regulations of the FLSA. They establish only that the guarantee clause protects the rights of states to choose their own government officials and pass

their own laws, *In re Duncan*, 139 U.S. 449, 461, 11 S.Ct. 573, 577, 35 L.Ed. 219 (1891), to have a separate and independent judiciary, *Bauers v. Heisel*, 361 F.2d 581, 588 (3rd Cir.1966), to prescribe the qualifications of their own officers, *Taylor v. Beckham*, 178 U.S. 548, 570–71, 20 S.Ct. 890, 898–99, 44 L.Ed. 1187 (1900), and the right of state courts to be free of federally imposed rules of criminal procedure. *U.S. v. Downey*, 195 F.Supp. 581, 585 (S.D.Ill.1961).

tional provision."). Accordingly, to the extent defendants base their motion for summary judgment on their argument that the FLSA is a violation of the Guarantee Clause, the motion for summary judgment is **denied.**

### 2. Commerce Clause

■ Defendants' "Commerce Clause" argument is that "the salary basis test and its interpretations impermissibly invade the province of local authorities to regulate the discipline of its employees". (Defendants' Reply, at 7). This argument is essentially no different than defendants' Guarantee Clause argument, and, we have already discussed, similar arguments have already been rejected by the Seventh Circuit in *Mueller* and by the Supreme Court in *Garcia.* Whether framed in terms of whether the salary test regulation "substantially affects interstate commerce," or whether it denies the states their guarantee of a republican form of government, the inquiry is essentially the same: does the salary test regulation intrude on traditional state governmental functions or sovereignty? As we have already discussed, the answer to that question is undoubtedly "no". Accordingly, to the extent defendants' motion for summary judgment is based upon their claim that the salary test violates the Commerce Clause, the motion for summary judgment is **denied.**

### 3. Administrative Procedure Act

■ Finally, defendants argue that the disciplinary component of the salary test as applied to all employers violates the Administrative Procedure Act, which provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." 5 U.S.C. § 706(2)(A). This challenge is similar, but not identical, to the challenge mounted previously by defendants in their first summary judgement motion, which, as we have noted was ultimately rejected by the Seventh Circuit in *Mueller.* Defendants initial challenge was to the salary test as applied to public employees, and *Mueller* only addressed the validity of the salary test regulation as applied to public

employers. However, as defendants correctly point out, the *Mueller* opinion seemed to invite a broader challenge to the regulation. *See,* 54 F.3d at 443.

#### a. Standard of Review

The parties are understandably in disagreement over which standard of review this court must apply in reviewing the DOL's "salary test" regulation. Plaintiff argues that the salary test is a "regulation", entitled to the highly deferential standard of review set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). In fact, the Seventh Circuit applied the *Chevron* standard in *Mueller,* explaining that

> When Congress explicitly delegates responsibility for completing a statutory scheme by defining key terms, here terms on which exemption from the statute's requirements turns, without supplying criteria for the exercise of the delegated responsibility, the scope of judicial review is extremely limited. Judicial review of administrative action typically involves comparing the action with the criteria set forth by the legislature to guide the agency. If there are no criteria, about all the court can do is determine whether the agency's action is rationally related to the objectives of the statute containing the delegation.

54 F.3d at 442.

Defendants, on the other hand, contend that the salary test is a "non-regulatory interpretation," or "interpretive bulletin", to which we must apply the more exacting scrutiny described in *Skidmore v. Swift & Co.,* 323 U.S. 134, 136, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). (the deference given to a ruling, interpretation and opinion of the Administrator "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."). Defendants correctly point out that, in *Klein,* the Seventh Circuit cited *Skidmore* as the standard to be applied to the salary test, although in that case the court stated that "[w]e accord great deference to an agency's

interpretations of its regulations, despite that they are not binding on us." 990 F.2d at 285. In any event, it appears that we must treat the agency regulations, or interpretations, with deference. Ultimately, we need not decide whether *Chevron* or *Skidmore* sets forth the appropriate standard, because we believe that the disciplinary component of the salary test cannot survive scrutiny under even the highly deferential *Chevron* standard.

### b. Application

An employee is considered to be paid "on a salary basis" within the meaning of the regulation if he regularly receives each pay period on a weekly or less frequent basis, a predetermined amount, which is not subject to reduction because of variations in the quality or quantity of the work performed. The employee must receive his full salary for any week in which he performs any work without regard to the amount of work done. The regulation also sets forth certain exceptions under which an employer may dock an employee's pay and still retain the exemption. Deductions from salary are permissible for absences greater than a day when the employee is absent for personal reasons, *Id.*, at § 541.118(a)(2), or absent for sickness or disability when the employee has no more leave time available, *Id.*, at § 541.118(a)(3). Disciplinary deductions may also be imposed for violation of safety rules of major significance, without affecting the employee's salaried status. *Id.*, at § 541.118(a)(5).[7] However, "penalties for violation of rules other than 'safety rules of major significance' are outside the scope of the exception and must affect the employee's salaried status under the Act." *Lacey v. Indiana State Police Dept.*, 810 F.Supp. 244, 247 (S.D.Ind.1992). It is this aspect of the regulation that defendants challenge as arbitrary and capricious and contrary to the intent of Congress.

So far as we can tell, defendants assert that the regulation is invalid for two reasons: (1) it "allows *short* suspensions for *serious* misconduct, but effectively requires *long* suspensions for more *minor* offenses;" (Defendants' Memorandum at 22) and (2) the limitation on discipline, prohibiting suspensions of less than a week, is unrelated to whether a person is truly an exempt administrative, professional or executive employee. (See Defendants' Memorandum at 21).

### i. Consistency in Discipline

Defendants mischaracterize the salary test by suggesting that it allows short suspensions for serious offenses and effectively requires long suspensions for minor ones. The salary test does not "require" long suspensions for minor offenses; it merely states that *if* an employee is subject to suspensions without pay for less than one week, that is conclusive evidence that the employee is an hourly, not a salaried, employee. By the same token, an employer is never prohibited from suspending an employee without pay for less than a week, "but the price for doing so is the loss of its ability to treat those employees as executive, administrative, or professional employees exempt from overtime pay." *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1341 (11th Cir.1994). Furthermore, the regulation in no way "requires" long suspensions for "minor" violations. The fact that an employer cannot suspend an employee for less than a week and still consider that employee exempt does not mean that the only available disciplinary option is to suspend that employee for more than a week. The Police Department, in this case, can also issue a written reprimand, demote the wayward officer, or perhaps give him or her a less desirable assignment, such as a "desk job" or traffic duty. In sum, while the salary test limits an employer's flexibility to some degree, it never "prohibits" or "requires" any type of discipline, and certainly does not "require" long suspensions for minor infractions. Therefore to the extent that defendants' claim that the safety rule is invalid is based upon their belief that it "forbids" short suspensions for all but major safety violations, and "requires" long suspensions for minor infractions, that claim is rejected and the motion for summary judgment is **denied.**

---

7. The regulation defines "safety rules of major significance" to include "only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines." § 541.118(a)(5).

*ii. Correlation between discipline and salaried status*

Defendants also claim that there is no rational correlation between the structure of discipline and the character of employees as hourly or salaried workers. This challenge to the regulation is worth closer attention since the Seventh Circuit, in *Mueller,* suggested that "[i]t might be possible to question the rationality of the rule with respect to all employers." 54 F.3d at 443. Specifically, Judge Posner said:

How, it might be asked, does the structure of discipline affect the character of employees as hourly or salaried workers? The only answer that has been suggested or that occurs to us is that if an employer measures out discipline in the form of fractions of a weekly salary, the implication is that the employee is really being paid on an hourly basis. This is pretty feeble.

*Id.*

We agree that this rationale is "pretty feeble". In particular, we do not think it is rational to say that because an employee who is otherwise considered an exempt administrative, professional or executive employee might be docked one or two or three days pay, that it necessarily follows that the employee must therefore really be an hourly employee. As applied to this case, the salary test would mean that a police captain or lieutenant whose duties meet the duties test and whose pay is calculated on a monthly or yearly basis, is considered to be an hourly employee and therefore entitled to overtime pay simply because he or she might be suspended without pay for one to four days for a disciplinary violation. Or to take another example, is a bank vice president, who clearly meets the duties test for an executive employee, and who is paid $100,000 per year, to be considered an hourly employee just because she might be docked a few days pay for swearing at the bank president? The regulation appears to say so, but we see no logic in this. "Congress intended to exempt from the overtime provisions of the FLSA those employees who are not in any realistic sense hourly-wage employees." *Balgowan v. State of New Jersey Department of Transportation,* 84 F.3d 656, ——— (3rd Cir.1996).

We fail to see the rationality in a rule which provides that pro-rating, for such a limited purpose as a disciplinary suspension, an employee's weekly, monthly, or yearly pay into a daily figure necessarily means that the employee is really an hourly-wage employee. If a person is paid on an annual, monthly, bi-weekly, or weekly basis, they are considered under the rule to be "salaried". However, if their salary is broken down into daily portions, for the limited purpose of imposing a punitive sanction, the rule presumes that they must really be paid on an hourly basis. This is illogical; a $35,000/year executive does not cease to be a $35,000/year executive just because she is suspended for four days for breaking a rule. We do not doubt that it might be rational to look to the length or frequency of disciplinary suspensions without pay as one of several factors in determining the employee's status. However, we do not think it is rational to consider such suspensions as *conclusive* evidence that an employee is hourly. We therefore find that the disciplinary component of the salary test is arbitrary and capricious, and that, in accordance with the Administrative Procedure Act, we must set aside that regulation. Because the salary test is invalid, we once again decline to apply it to Bowman for determining whether he is exempt under the FLSA. As we stated in our previous entry on summary judgment, because the parties agree that Bowman's duties in his positions before his assignment to the Municipal Garage position satisfy the duties test, defendants have met their burden of showing that Bowman was an exempt employee under the FLSA for that period of time. Accordingly, defendants' motion for summary judgment on the FLSA Claim for the period of time between April 1986 and September 1988 is **granted,** and Bowman's Motion for Reconsideration is **denied as moot.**

## CONCLUSION

Bowman correctly asserts in his motion to reconsider that if the salary test is valid and is applied to him, he is a non-exempt employee entitled to overtime. However, we find that the disciplinary component of the salary test is arbitrary and capricious, and is thus

invalid as applied to all employers. Thus, the duties test is the sole measure of whether Bowman is an exempt employee. Because the parties agree that Bowman meets the duties test as to the period of time from April 1986 to September 1988, we grant defendants' motion for summary judgment on the FLSA claim as to that period of time. The only remaining issues left for trial in this case are (1) whether Bowman met the duties test during the time he was assigned to the Municipal Garage from September 1988 to August 1989, and (2) if he did not meet the duties test and is thus a non-exempt employee, how much if any overtime pay is due Bowman for his work at the Municipal Garage.

It is so ORDERED.