## AMERICAN CENTRAL LIFE INSURANCE COMPANY v. BOTT.

[No. 10,779. Filed April 1, 1921. Rehearing denied June 10, 1921. Transfer denied October 12, 1921.]

INSURANCE.—*Life Insurance.*—*Action on Check in Settlement of Policy.*—*Fraud of Insured in Procuring Policy.*—A life insurance company, having voluntarily issued a check to the beneficiary of a life policy without any investigation of its liability thereon, cannot, in the absence of fraud on the part of the beneficiary in securing the check, avoid payment of the check on the ground that insured was guilty of fraud in the procuring of the policy, the debt evidenced by the policy being extinguished by the check.

From Floyd Circuit Court; *John M. Paris,* Judge.

Action by Margaret Bott against the American Central Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Stotsenberg & Weathers* and *Woollen, Cox & Welliver,* for appellant.

*Charles W. Schindler* and *Charles D. Kelso,* for appellee.

McMAHAN, J.—This appeal is from a judgment in favor of appellee on a check issued to her by appellant, she being the beneficiary in a policy of insurance, issued by it on the life of her husband, he having died with such policy presumptively in force.

Appellant filed an answer admitting that on November 6, 1919, it drew the check mentioned in the complaint for the sum of $1,000 payable to the order of the appellee; that said check was as it purported on its face to be, in full for all claims under a certain policy theretofore issued by it on the life of one John Bott and which was terminated October 27, 1919, by his death; that said check was delivered to appellee November 8, 1919, and deposited by her for collection and in due

course was presented to the bank on which it was drawn for payment, but that the bank on notice and order from appellant refused to pay the same.

The answer then alleged that the insured, John Bott, prior to the time when he made application for insurance was suffering from certain diseases; that he then and for several years prior thereto had been receiving a pension from the United States Government from and on account of physical disability, which facts were well known to the insured but were unknown to appellant until after the execution and delivery of said check. That the said disability of the said insured, and the fact that he had consulted physicians with reference to said disabilities and was drawing a pension rendered him unfit as a risk for life insurance. It is then alleged that the insured for the purpose of deceiving appellant and inducing it to issue said insurance policy, falsely and fraudulently stated in the application therefor that he was not suffering from any of the named disabilities, had not consulted or employed a physician for himself and had never applied for and secured a pension on account of any disability, which statements it is alleged were false and known to be false by the insured when made, and were made for the purpose of procuring such insurance; that appellant did not learn of the falsity of such statements until November 10, 1919, after the delivery of said check, whereupon it stopped payment on said check and notified appellee that it would not be bound by said policy or said check and that it on said day tendered and offered to pay appellee the amount of the premium paid on the policy with interest, which sum it paid into court for the use of appellee.

A demurrer for want of facts having been sustained to this answer, appellant excepted and refusing to plead further, judgment was rendered against it for the amount of the check.

Appellant contends that the court erred in sustaining the demurrer to this answer and in support of this contention says, that it is fundamental that a statement made by an applicant in his application for life insurance relating to his health and physical condition are material to the risk and if false avoids the policy, and that where the knowledge of such fraud did not come to the insurer until after it had issued its check, such facts would be a good defense in an action upon the policy, or would be sufficient on which to base an action to recover the money paid on such policy.

*Supreme Lodge, etc.* v. *Miller* (1915), 60 Ind. App. 269, 110 N. E. 556; *Iowa Life Ins. Co.* v. *Haughton* (1909), 46 Ind. App. 467, 87 N. E. 702; and *Fidelity, etc., Life Assn.* v. *McDaniel* (1900), 25 Ind. App. 608, 57 N. E. 645, cited by appellant were actions based on the policy itself and not on a check voluntarily issued by the insurer in payment of the policy, without any demand by the beneficiary as appears to have been done in this case, and are not of controlling influence.

*Centennial Mutual Life Assn.* v. *Parham* (1891), 80 Texas 518, was an action by the insurance company against the appellee who was the beneficiary in a policy of insurance issued on the life of his wife. The action was brought on the theory that the policy was obtained through false representations made by the insured in her application, breach of warranties contained in the policy and fraudulent combination between the insured and appellee to thus obtain the policy, as well as false and fraudulent statements made by appellee after the death of his wife for the purpose of securing the payment of the insurance.

In *National Life Ins. Co.* v. *Minch* (1873), 53 N. Y. 144, the beneficiary in the policy was the husband of the insured, and it was charged that he and his wife entered into a conspiracy to procure the issuance of a

policy of insurance on the life of his wife in his favor, knowing at the time that she was suffering from an incurable malady and that after the death of his wife the beneficiary made false and fraudulent statements as to the cause of her death, and that the company believing such statements to be true and relying on them paid the policy.

In each of these cases it was charged that the beneficiary was guilty of fraud in procuring the issuance of the policies and also made false and fraudulent statements and representations after the death of the insured in order to secure the money on the policy.

*Mutual Life Ins. Co.* v. *Wager* (1858), 27 Barb. (N. Y.) 354, was an action by the insurance company to recover back from Wager the amount paid on the policy wherein the life of one Frisbie had been insured in favor of Wager. When the application for insurance was made, Wager signed a statement to the effect that "as far as he knew" the insured was not afflicted with any disorder tending to shorten his life. This statement was made a part of the policy which contained a provision that if the declaration made by Wager should be found to be untrue, the policy should be void. The trial court charged the jury, that "If he (Frisbie) had (at any time on or before the date of the policy) either 'spitting of blood,' within the meaning of the policy, or any disease which tends to shorten life, and the defendant knew it when the policy was effected, then the plaintiffs are entitled to recover all the money paid by them, together with interest. If Frisbie had none of these diseases, *or if he had either of them and the defendant did not know it,* the plaintiffs cannot recover." The court after saying that this part of the instruction was worded with "remarkable correctness and caution" said: "It not being claimed, and there being no direct evidence to show, that although Wager originally, when

the policy was made, did not know that Frisbie had been or was afflicted with 'spitting of blood,' yet that subsequently and before he received the money of the company, he had been informed of that fact; the plaintiffs in their complaint and on the trial putting their charge of fraud and misrepresentation, against Wager, on the ground that the knowledge of Frisbie when he signed the declaration was the knowledge of Wager; and there being no evidence of any other or independent false pretense, act or device of Wager after the loss, by means of which he obtained the money; or of a misrepresentation by him of any circumstance attending the loss calculated to mislead the company and to prevent inquiry; the charge substantially was, that the plaintiffs could not recover in this suit, *without proof of fraud on the part of Wager in the making of the original contract of insurance;* in other words, that the plaintiffs could not in this suit recover back the money paid by them, on the ground, merely, that the declaration of Frisbie that he had not been afflicted with 'spitting of blood,' &c. was false, *and that they were ignorant of it when they paid the money."* Continuing on page 369, the court said: "The time for them to have avoided their contract was before its execution, if they had the means of doing so. They cannot avoid it after its execution, on the ground of mere mistake. * * * They are barred by their own act from maintaining this suit on any ground merely affecting the validity of the original contract, known, or which upon inquiry might have been known, when they paid the loss, and which would have been a defense to an action on the policy, except fraud. In this action, they must be deemed, by the payment, to have settled or waived, all questions of law or of fact as to the validity of the original contract, except fraud, which they had the means of raising when they paid the loss."

*Smith* v. *Glens Falls Ins. Co.* (1875), 62 N. Y. 85, is clearly against the appellant's contention. The policy in this case was against loss by fire. After a partial loss, it was agreed between the insurer and the insured that the latter should surrender the policy to be canceled and that the insurance company should pay $1,275 and the unearned premium. The policy was accordingly surrendered and canceled. The action was upon a special contract and not upon the policy. The court affirmed a judgment against the insurance company on the ground that there was no finding upon which the allegation of fraud in obtaining the new contract could be predicated, saying: "The settlement and contract to pay a specified sum operates as a waiver of any warranty in the policy unless the settlement and contract were procured by the fraud of the assured, and this is not found and scarcely claimed. It is said that the company did not know of the breach of the warranty at the time of the settlement. The answer is, that when the claim was made for the loss the company was required to ascertain the facts as to any breach of warranty. If they saw fit to pay the claim, or compromise it, or to make a new contract without such examination, it must be deemed to have waived it, and in the absence of fraud it cannot afterwards avail itself of such breach. It cannot urge payment or settlement by mistake on account of knowledge of such breach. The time for investigation as to breaches of warranty is when a claim is made for payment, and if the company elects to pay the claim, or what is equivalent, to adjust it by an independent contract, it cannot afterward, in the absence of fraud, retract and fall back upon an alleged breach of warranty."

In the instant case the check issued by appellant to appellee was delivered by appellant to appellee and received by her in payment of the life insurance policy.

Therefore no recovery could be had by appellee on the policy. Her only remedy when the payment of the check was refused, was to sue upon the check. The debt evidenced by the policy was extinguished. *Northwestern, etc., Ins. Co.* v. *Kidder* (1904), 162 Ind. 382, 70 N. E. 489, 66 L. R. A. 89, 1 Ann. Cas. 509.

The appellant having voluntarily issued the check without any investigation as to the liability on the policy cannot in the absence of fraud on the part of appellee in securing such check defend on the ground, that the insured was guilty of fraud in securing the policy. The answer failed to allege any fraud on the part of appellee. So far as we are advised from the pleading, she had no knowledge of the existence of the policy until the check sued upon was received. Appellant did not wait for any proof of the death of the insured or any request for payment on the part of appellee. Its act in making the speedy payment was voluntary and made for purposes best known to itself, but not set out in its answer.

The demurrer was correctly sustained. Judgment affirmed.