David B. **BOWMAN**, Plaintiff–Appellant,

v.

**CITY OF INDIANAPOLIS, et al.,**
Defendants–Appellees.

No. 96–3987.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1997.

Decided Jan. 8, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 12, 1998.

Shannon B. Adams–Bowman (argued), Indianapolis, IN, for Plaintiff–Appellant.

Dale R. Simmons (argued), Office of the Corporation Counsel, City Counsel Legal Division, Indianapolis, IN, for Defendants–Appellees.

Before CUMMINGS, COFFEY, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In *Auer v. Robbins,* —— U.S. ——, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), the Supreme Court upheld the Secretary of Labor's "salary basis" test for determining an employee's exempt status from the overtime requirements of the Fair Labor Standards Act 9 (FLSA), 29 U.S.C. § 201 *et seq.,* as it applied to public-sector employees. In so doing, the Court applied the interpretative principles of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to the questions before it. Our case presents slightly different questions about the applicability of the "salary basis" test to public employees, but we conclude that it is governed by *Auer.* This means that plaintiff David Bowman was not exempt from the FLSA during the time he worked as an officer for the Indianapolis Police Department. We therefore reverse the district court's holding that Bowman was not entitled to overtime pay under the FLSA.

I

Bowman became a member of the Police Department in October 1963. By the time the FLSA became applicable to public employees, as a result of the Supreme Court's decision in *Garcia v. San Antonio Metro.*

*Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), he had risen to the rank of field lieutenant; he later became a field captain. In response to *Garcia,* on April 17, 1986, the Police Department issued General Order 20.03, which proclaimed that "[i]n accordance with their job duties, employees in the ranks of sergeant, lieutenant, and captain are exempt from coverage under the FLSA as executives or administrators, as those terms are defined under the Act." The consequence of this order for Bowman and the other listed officers was that they received no overtime compensation for hours worked beyond the normal 40–hour work week. Bowman alleged, and the Police Department does not contest at this point, that he regularly worked more than 40 hours each week with the full knowledge of his superiors.

Since 1972, Bowman had also moonlighted as an executive security officer. Prior to January 1988, this had not caused any problems, but in that month Bowman's supervisor initiated an internal affairs investigation to see if Bowman was working on that job during hours when he was being paid to work for the Police Department. In response to the inquiry, Bowman argued that his pay could not legally be based on which particular hours he worked, because he had been classified as an "executive or administrative" employee and he was, under the General Order, an exempt employee for FLSA purposes. The Police Department was unconvinced. At the conclusion of the investigation in March 1988, it suspended Bowman without pay for six months for neglect of duty, substandard performance, and violation of rules and regulations. Bowman alleges that he was never advised of any such deficiencies in his work: the Department never told him what duty he had neglected, there was no "performance standard," and no one told him until his later trial that he had violated the General Order quoted above.

Not content with the suspension, the Police Department also referred its concerns to the county prosecutor, who indicted Bowman for theft, attempted theft, and official misconduct. The criminal charges alleged that Bowman had been working as a security provider at the same time that he had been claiming and receiving compensation from the Police Department. Less than a month after his indictment, Bowman completed his six-month suspension and returned to work. He was reassigned to the position of coordinator at the Municipal Garage, where he worked from September 1988 until he left the Police Department a little less than a year later. On July 18, 1989, he was convicted of one count of theft and four counts of official misconduct. See generally *Bowman v. State,* 573 N.E.2d 910 (Ind.Ct.App.1991). His resignation followed within a month.

## II

In July 1991, Bowman filed suit against the City of Indianapolis, its mayor, and various members of the Police Department (collectively, the City). His complaint, as amended, alleged that he was not an exempt employee under the FLSA and that he was therefore entitled to overtime compensation. The complaint also charged that the City and the police chief had committed fraud by misrepresenting to him that he was an exempt employee. Had that misrepresentation not been made, he claimed, he would not have taken the outside work that led to both the administrative and the criminal proceedings against him.

Both parties moved for summary judgment, and on November 22, 1994, the district court issued its first opinion. It looked first to the regulations issued by the Department of Labor to decide whether Bowman was exempt. The FLSA itself says that individuals are exempt if they are employed in a "bona fide executive, administrative, or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary...." 29 U.S.C. § 213(a)(1). Under the regulations the Department has passed, an employee must satisfy both a "duties test" and a "salary test" in order to be considered exempt from the overtime requirements. See generally 29 C.F.R. § 541.1 *et seq.* For the time period that remains at issue in the case—from April 1986 until Bowman's assignment to the Municipal Garage in September 1988—the district court found that it was undisputed that Bowman's

position satisfied the "duties test." *Bowman v. City of Indianapolis,* 885 F.Supp. 1152, 1155 (S.D.Ind.1994) *(Bowman I).* (Indeed, that remains uncontested to this day, and we therefore do not mention it further in this opinion.) The court also found that, if it were to apply the salary test, Bowman would qualify as a non-exempt employee. *Id.* at 1156. Because it concluded that the salary test was inapplicable to public sector employees, however, the court ultimately granted the City's motion for summary judgment on Bowman's remaining FLSA claims. *Id.* at 1157. It also granted summary judgment for the City on his fraud claim, on the ground that any misrepresentation that might have occurred was one of law. *Id.* at 1159. The court found that the statements (about his exempt status) alleged to be misrepresentations were not necessarily false, and that in any event misrepresentations of law are generally not actionable in Indiana. *Id.* at 1158–59.

After this court decided in *Mueller v. Reich,* 54 F.3d 438 (7th Cir.1995), that the regulation establishing the salary test "is valid, period" in the context of a public employee case, *id.* at 442, Bowman moved for reconsideration. Recognizing its obligation to follow Mueller, the district court vacated its partial summary judgment for the City. *Bowman v. City of Indianapolis,* 892 F.Supp. 212, 213 (S.D.Ind.1995) *(Bowman II).* This was not, however, the end of the pretrial maneuvers. Bowman filed another "limited" motion for reconsideration, and the City filed an "amended" second motion for summary judgment. The court denied Bowman's motion as moot, but it once again granted the City's motion. It rejected the City's argument that the salary basis regulation was invalid as an unwarranted invasion of state sovereignty under Article IV, § 4 of the U.S. Constitution (the Guarantee Clause), and the argument that it violated the Commerce Clause. Nonetheless, the court found that the regulation was arbitrary and capricious, as the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), uses the term. It conceded that this argument was "similar" to the one presented in *Mueller,* but it read *Mueller* very narrowly to reach only the question whether the regulation could reach public employees, not the "broader" question whether the regulation itself was properly issued by the Department of Labor.

Following this last grant of summary judgment, the parties settled Bowman's FLSA claims covering the Municipal Garage period and stipulated to the dismissal of those claims. This had the effect of resolving all matters at the district court level. Bowman now appeals both the grant of summary judgment on his FLSA claim for the period before the Municipal Garage work and the grant of summary judgment on his fraud claim.

## III

### The FLSA Claim

The immediate question before us is whether Bowman satisfied the salary test for non-exempt status. More generally, we must also consider whether the district court correctly concluded that the regulation setting forth the salary test is arbitrary and capricious, as applied to public employees. Recalling that the FLSA empowers the Department of Labor to write regulations defining the terms used to describe exempt individuals, see 29 U.S.C. § 213(a)(1), we begin with the language of the pertinent regulation:

29 C.F.R. § 541.118. Salary Basis.

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

. . .

(5) Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status. Safety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines.

Central for present purposes is the part of the test stipulating that the employee's compensation may not be "subject to reduction" because of variations in the quality or quantity of the work performed.

In *Auer*, the Supreme Court considered a case in which the St. Louis Police Department argued that its sergeants and lieutenants were exempt from the FLSA as "bona fide executive, administrative, or professional" employees, under 29 U.S.C. § 213(a)(1). The officers contended that under the salary basis test they were not exempt, because their compensation could be reduced for a variety of disciplinary infractions relating to the "quality or quantity" of the work they performed. They also argued that the exception to this exception—under which disciplinary measures for infractions of safety rules of major significance do not affect exempt status—did not apply to them. The City then argued, much as the Indianapolis authorities did before the district court under their second amended motion for summary judgment, that the salary basis test was an unreasonable interpretation of the statutory exemption. See generally *Auer*, ⸺ U.S. at ⸺ – ⸺, 117 S.Ct. at 908–09.

The Court began by noting that it was obliged under *Chevron* to uphold the Secretary's approach as long as it is "based on a permissible construction of the statute." *Id.* at ⸺, 117 S.Ct. at 909. Citing this court's decision in *Mueller*, the Supreme Court found that, "[w]hile respondents' objections would perhaps support a different application of the salary-basis test for public employees, we cannot conclude that they compel it." *Id.* Turning then to the "more fundamental objection" raised, which was the Secretary's alleged failure to give adequate consideration to the question whether the salary basis test

"really makes sense" in the public sector, the Court found no basis for the court to set aside the agency's action "prior to any application for relief addressed to the agency itself" through a petition for rulemaking under 5 U.S.C. § 553(e). *Id.* at ⸺, 117 S.Ct. at 910. Last, the Court upheld the Secretary's interpretation of the term "subject to deduction" in the regulation, under which he required either an actual practice of making such deductions or an employment policy that created a significant likelihood of such deductions. *Id.* at ⸺, 117 S.Ct. at 911.

■ In our case, a city "police merit" ordinance governs all members of the Indianapolis Police Department and explicitly makes provision for disciplinary reductions in pay for periods of less than a week. The Chief of Police has the authority to discipline "any member of the department" by, among other things, suspending him "without pay for up to six (6) calendar months." Indianapolis, Ind., Code § 3–319(d)(2). The assistant chief, deputy chiefs, and majors are authorized to "suspend an officer for not more than ten (10) working days without pay." *Id.* § 3–319(e). Since nothing in the ordinance exempts sergeants, lieutenants, or captains from these sanctions, it follows that they are subject to being disciplined by suspension without pay for periods of less than a week. That means, in turn, that their compensation may vary depending on the quality of the work they perform, and thus that they fail the salary basis test for exemption from the FLSA.

Other information about the operations of the Indianapolis Police Department in the record confirms this conclusion. For example, Interrogatory 13 asked the Department to state whether the absence of less than a day for personal reasons of an IPD employee classified as an exempt executive or administrator would subject that employee to a salary deduction. The Department responded, "Yes, if there was no form of time off or leave available for the officer to take and they did not record a total of 160 hours worked for the 28 day period." (Apparently this regulation has since been changed, but the change is not material to Bowman's case.) The Department also confirmed in its

response to Interrogatory 14 that the "Plaintiff was a salaried employee who was required to work, or receive credit for hours worked through various types of time off, for a total of 2,080 hours during the year in order to receive his full salary." These responses indicate that, in addition to quality considerations, the quantity of time people in Bowman's position worked could also affect their pay.

■ As noted before, in the immediate proceedings below, the district court agreed that Bowman failed the salary basis test for exemption (and thus was non-exempt), but it accepted the City's argument that "there is no rational correlation between the structure of discipline and the character of employees as hourly or salaried workers." *Bowman v. City of Indianapolis*, 927 F.Supp. 309, 315 (S.D.Ind.1996) *(Bowman III)*. Whether or not this question was legitimately open after our decision in *Mueller* is at this point a moot question. The Supreme Court's disposition of almost the same argument in *Auer* resolves the question, unless or until some party avails itself of the administrative avenue under 5 U.S.C. § 553(e) suggested by the Court. The Secretary advanced the following justification for his rule in *Auer:* "[E]mployees whose pay is adjusted for disciplinary reasons do not deserve exempt status because as a general matter true 'executive, administrative, or professional' employees are not 'disciplined' by piecemeal deductions from their pay, but are terminated, demoted, or given restricted assignments." *Auer,* —— U.S. at ——, 117 S.Ct. at 909. Even though this may not be the only way to look at the issue, the Court found it a permissible one, and so must we.

The City has also argued that the Secretary's regulation is arbitrary because the Department has since amended part of the salary test addressing reductions in pay for work absences to provide a special exception for public sector employers, even though she has not similarly amended the disciplinary deduction rule. See 29 C.F.R. § 541.5d (effective date Sept. 18, 1992). This rule, we note in passing, would not be applicable to Bowman's case even if it were retroactive, because his reduction in pay was a disciplinary one, not

one to adjust for partial-day absences. In any event, this argument is merely a variation on the "arbitrariness" argument made and rejected in *Auer.* The City is still fighting the battle against the application of the salary basis test to public employers, but in light of *Auer* we see no merit in its arguments.

We agree with the district court that the City's arguments under the Guarantee Clause, the Commerce Clause, and the Tenth Amendment were without merit. We ourselves noted in *Mueller* that there was nothing to the argument that subjecting "the states to the rule violates the constitutional guarantee to each state of a republican form of government," 54 F.3d at 443, and we see no reason to revisit the question here. The Commerce Clause/Tenth Amendment arguments amount to a request for this court to reconsider the Supreme Court's *Garcia* decision, which we obviously cannot do.

## IV

### The Fraud Claim

■ Last, Bowman would like to resurrect his fraud claim against the City defendants. Here, he is out of luck. Even though we disagree with the district court's conclusion that the statements about his exempt status were correct, we agree that any misrepresentations the City might have made related to questions of law that were not actionable in Indiana. (We are aware that the Indiana Supreme Court has criticized the distinction between a misrepresentation of law and fact rather strongly. See *Lawyers Title Ins. Corp. v. Pokraka,* 595 N.E.2d 244, 249 (Ind. 1992). Nevertheless, because the *Pokraka* court expressly declined to eliminate the distinction, we think it appropriate to apply the law as it currently stands and to leave any major change in doctrine to the Indiana judiciary.)

■ To demonstrate fraud under Indiana law, a plaintiff must show (1) at least one representation of past or existing fact that (2) is false, (3) was made with knowledge or reckless disregard of its falsity, and (4) causes reasonable reliance to the detriment of the person relying upon it. *Scott v. Bodor,*

*Inc.,* 571 N.E.2d 313, 319 (Ind.Ct.App.1991); *Plymale v. Upright,* 419 N.E.2d 756, 760 (Ind.Ct.App.1981). A misstatement of law generally may not be the basis for a fraud action. *Plymale,* 419 N.E.2d at 763–64. Exceptions exist for misrepresentations of law that include express or implied misrepresentations of fact, see *Scott,* 571 N.E.2d at 319–20; for cases where the individual making the misrepresentation of law is an attorney or claims some special legal knowledge, thereby inducing reliance, see *id.* at 319 (citing *Kinney v. Dodge,* 101 Ind. 573, 576 (1985)); for cases in which the misrepresentation relates to the law of a foreign jurisdiction, see *Scott,* 571 N.E.2d at 319 (citing *Travelers Ins. Co. v. Eviston,* 110 Ind.App. 143, 37 N.E.2d 310, 316–17 (1941)); and for situations in which there is a special relationship of trust and confidence between the parties, see *Peoples Trust Bank v. Braun,* 443 N.E.2d 875, 879 (Ind.Ct.App.1983).

Bowman does not qualify for any of these exceptions. He does not deny that an employer's label of an employee as overtime-exempt is a representation of law. His first effort is to suggest that the general rule does not apply to the special relationship between employer and merit employee, but we find no Indiana authority indicating that the particular employment relationship alters the basic requirements for a fraud case. The City's statements did not include express or implied misrepresentations of fact. No one claimed superior knowledge of the FLSA in a manner that would induce reliance by the other party. (Indeed, Bowman appears to have been quite familiar with the law; he provided copies of it, along with its implementing regulations and relevant case law to the police department personnel investigating him. He would thus probably have a difficult time demonstrating any reliance on the City's statements.) The FLSA is plainly not a law of a foreign jurisdiction. Last, Bowman has presented no factual evidence that would support a conclusion that the relationship between the City and its merit employees is a "confidential relationship," for purposes of Indiana law. See *Hunter v. Hunter,* 152 Ind.App. 365, 283 N.E.2d 775, 779 (1972) (existence of confidential relationship depends on specific facts such as whether one

party has superiority, influence, or inequality over a dependent or weak party). Even if a general duty of good faith exists in employment contracts, as Bowman argues relying on *H.C. Bay Co. v. Kroner,* 83 Ind.App. 541, 149 N.E. 184, 185 (1925), that could not be enough to satisfy the "confidential relationship" rule, or it would impose extraordinary duties on virtually every Indiana employer. We would need far stronger evidence than Bowman offers to reach such a result.

**V**

For the reasons we have described, Bowman is entitled to summary judgment on his claim that he was non-exempt under the FLSA for the period from April 1986 through September 1988. We therefore RE-VERSE the district court's grant of summary judgment for the City on this claim. We AFFIRM the court's grant of summary judgment on the fraud claim. The case is remanded for computation of the amounts owed to Bowman under the FLSA for overtime worked, if any, see *Bowman v. State, supra,* and for any further proceedings consistent with this opinion.

Each party will bear its own costs on appeal.