**Edward J. SPOLNIK, Jr., D.D.S., Plaintiff,**

v.

**GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. IP97–1198–C–T/G.**

United States District Court, S.D. Indiana, Indianapolis Division.

March 29, 2000.

Robert E. Saint, Emswiller, Williams, Noland & Clarke, Indianapolis, IN, Ronald E Elberger, Bose McKinney & Evans, Indianapolis, IN, for plaintiff.

David M Mattingly, Ice Miller Donadio & Ryan, Indianapolis, IN, for defendant.

### Entry Ruling on Motions

TINDER, District Judge.

The following motions come before the court for ruling: (1) Plaintiff's Motion to Dismiss (regarding counter-claims/defenses of fraud and/or mutual mistake of fact seeking recission and/or reformation); (2) Plaintiff's Motion to Dismiss Counter–Claim (regarding counter-claim of overpayment); (3) Guardian's Motion for Summary Judgment; (4) Motion to Amend Plaintiff's Complaint for Damages; and (5) Motion to Amend Plaintiff's Response to Statement of Material Facts and Include Affidavit of Ronald E. Blacklock, Plaintiff's Affidavit and Plaintiff's Amended Complaint As Additional Evidence in Response to Defendant's Motion for Summary Judgment.

### I. Background

The following facts are supported by proper citations to admissible evidence and are taken in the light most favorable to the Plaintiff, the non-moving party on the summary judgment motion, with all reasonable inferences based on the facts drawn in his favor. This presentation is limited to those facts which are material to the ruling on Guardian's summary judgment motion. Dr. Edward J. Spolnik, Jr., is a dentist who resides in Zionsville, Indiana. On or about June 15, 1989, he purchased a policy of disability income insurance from Guardian, Policy No. G–616655 ("disability policy"). On April 8, 1992, he purchased a policy for business overhead expense disability insurance from Guardian, Policy No. G–639175 ("business overhead policy"). He claims his insurance agent for these two policies was Marianne Hanson f/k/a Spolnik, his former wife. Dr. Spolnik and Ms. Hanson were married from November 1988 until March 1995. During their marriage, Ms. Hanson was an insurance agent and broker for Guardian and other insurance companies.

In the Fall of 1992, Dr. Spolnik, assisted by Ms. Hanson, applied for benefits under the Guardian disability policy. In September 1992, when he initially submitted his disability claim and again in December 1995, she told him he needed to have a 75% loss to be entitled to total disability benefits under the disability policy. She

also told him that he was not entitled to any disability benefits under his business overhead policy. He claims he placed special trust and confidence in her specialized knowledge regarding insurance, which he says he lacked. As a result, when he submitted his claim for disability benefits to Guardian, he only requested partial benefits under the disability policy and did not request benefits under the business overhead policy.[1]

Sometime between January 18, 1995, and June 30, 1995, Dr. Spolnik discovered Ms. Hanson had misled him and misrepresented the terms of his disability policies. In a letter dated June 30, 1995, he notified Guardian of his belief that he was entitled to total disability benefits under his policies since September 1992.

Dr. Spolnik commenced this action on July 27, 1997, by filing his Complaint, alleging fraud against Guardian based upon Ms. Hanson's misrepresentations. He contends he was "totally disabled" from September 1992 through August 1995 for purposes of his Guardian policies due to "myofascial pain syndrome." He claims that he is entitled to the difference between the partial disability benefits he collected from September 1992 through August 1995 and the total disability benefits to which he claims he was entitled. He seeks an additional $24,000 under the business overhead policy.

On June 1, 1999, Dr. Spolnik filed his first motion to dismiss counterclaim. He filed another motion to dismiss counterclaim on June 21, 1999. Also on that date, Guardian filed its Motion for Summary Judgment, seeking summary judgment on the Complaint.

Subsequently, on September 2, 1999, Dr. Spolnik filed a motion to amend his Complaint, seeking to add claims for forgery and scheme to defraud. In his motion, he claims that he first discovered during his deposition on April 15, 1999, potential forgeries when he was asked to identify his signature on certain applications and endorsements submitted to Guardian in connection with his disability insurance policies. Dr. Spolnik requested Guardian to produce the original applications and a handwriting exemplar of Ms. Hanson, but Guardian refused. He subsequently filed motions to compel production of same, and, on August 20, 1999, the court denied his motions to compel. Dr. Spolnik then obtained a handwriting analysis from Ronald E. Blacklock, a purported expert in handwriting comparisons, who has opined that Ms. Spolnik forged a certain endorsement to his disability policy.[2]

## II. Plaintiff's Motion to Dismiss Affirmative Defenses of Fraud and Mistake

Plaintiff moves to dismiss Defendant's counter-claims/defenses of fraud and/or mutual mistake of fact seeking recission and/or reformation of the disability insurance agreements for failure to state a claim. He contends that dismissal is appropriate because the Defendant failed to plead allegations of fraud with particularity as required under the federal rules. Subsequent to the filing of this motion to dismiss, the Defendant sought and was

---

1. In response to Guardian's statement of material facts, Dr. Spolnik states that Ms. Hanson may have misled him about the noncancellation of a $4,000 monthly disability policy, causing him to agree to reduce his monthly indemnity to $2,200 with a future option increase. (*See* Pl.'s Resp. to Statement of Material Facts ¶ 19.) This same statement is made in Plaintiff's proposed Amended Plaintiff's Response to Statement of Material Facts. This statement is not supported by an appropriate citation to materials in the record in either the original response or in the proposed amended response, so it does not suffice to create a genuine issue of material fact. Even if properly supported, a statement about the noncancellation of the policy amounts to a statement of law and, thus, like the other misrepresentations, fails to establish an actionable fraud claim. *See infra.*

2. The endorsement is entitled, "Supplement To Application To The Guardian Life Insurance Company Of America," and was part of the application for Guardian disability policy no. G–616655. Hereinafter it is referred to as the "Endorsement".

granted leave to file an Amended Answer, making allegations of fraud and mistake with particularity. Therefore, Plaintiff's Motion to Dismiss is **DENIED AS MOOT.**

### III. Plaintiff's Motion to Dismiss Counter–Claim of Overpayment

 Plaintiff moves, pursuant to FED. R. CIV. P. 12(b)(6) and (c), to dismiss the Defendant's counterclaim of overpayment for failure to state a claim. This motion was filed before the Defendant filed its Amended Answer; but the overpayment counterclaim was not amended. Thus, the court treats this motion as directed to the Amended Answer. In its Second Affirmative Defense/Counterclaim, the Defendant asserts, "To the extent that Defendant's payments to Plaintiff exceed its obligations, for reason of lack of disability or otherwise, Defendant requests a complete accounting and repayment of such sums together with interest and costs." (Am. Answer at 5.) "An accounting is a suit in equity governed by equitable principles and addressed to the sound discretion of the trial court." *Hammes v. Frank,* 579 N.E.2d 1348, 1355 (Ind.Ct.App. 1991).

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond a reasonable doubt that the [nonmovant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss for failure to state a claim, the court accepts as true the well-pleaded factual allegations in the challenged pleading and draws all reasonable inferences in favor of the nonmovant. *See, e.g. Massey v. Helman,* 196 F.3d 727, 731 (7th Cir.1999).

In support of his motion, the Plaintiff relies on *National Mut. Ins. Co. v. Fincher,* 428 N.E.2d 1386 (Ind.Ct.App.1981), for the proposition that the doctrines of waiver and estoppel extend to any ground upon which liability can be denied by an insurer. He also relies upon *American Central Life Ins. Co. v. Bott,* 76 Ind.App. 439, 130 N.E. 432 (1921), for the proposition that an in-surer which elects to pay benefits without an investigation cannot retract payment in the absence of fraud on the part of the insured. Neither case dictates that the Defendant's counterclaim be dismissed for failure to state a claim.

Whether the Plaintiff may defend against the accounting counterclaim on the basis of waiver or estoppel is not properly at issue on the Plaintiff's motion to dismiss. Even assuming that these affirmative defenses could be proven by the Plaintiff, these defenses do not convert a well-pleaded counterclaim into a claim upon which relief cannot be granted. The Defendant is not required to anticipate defenses to its counterclaims. *Bott* is distinguishable. In that case, the defendant insurance company sought to recover money paid under a life insurance policy on the basis that fraud was committed by the insured in securing the policy upon which payment was made. *Bott,* 130 N.E. at 434. The insurer in *Bott* did not make a claim for an accounting. Thus, *Bott* is inapposite. Further, the Plaintiff's claim that fraud is an element of an accounting claim is not supported in the law. The motion to dismiss is **DENIED.**

### IV. Defendant's Motion for Summary Judgment

#### A. Summary Judgment Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence is construed in the light most favorable to the nonmoving party and all reasonable inferences from the evidence are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a summary judgment motion has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T & H Mach., Inc.,* 191 F.3d 790, 796 (7th Cir.1999) (citing *Vector–Springfield Properties, Ltd. v. Central Illinois Light Co.,* 108 F.3d 806, 809 (7th Cir.1997)). A mere scintilla of evidence in support of the non-moving party's position is insufficient to demonstrate a genuine issue of material fact. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Liu,* 191 F.3d at 796. A genuine issue of material fact does not exist unless "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Liu,* 191 F.3d at 796.

**B. Discussion**

Guardian moves for summary judgment on the Complaint on the following grounds: (1) Plaintiff's fraud claim is barred by the applicable statute of limitations; (2) punitive damages would not be appropriate on the basis of vicarious liability under the circumstances of this case; (3) Plaintiff's fraud claim is not actionable because the alleged representations relate to questions of law and, any reliance by Plaintiff on the alleged misrepresentations was unreasonable as a matter of law; and (4) Plaintiff is estopped from taking positions in this action that are inconsistent with his legal positions in the case of *Spolnik v. Jacobson* pending in the Marion Superior Court. Guardian is entitled to summary judgment.

 Under Indiana law, a cause of action in fraud has the following elements: (1) a representation of past or existing fact that (2) is false, (3) was made with knowledge or reckless disregard of its falsity, and (4) causes reasonable reliance to the detriment of the person relying upon it. *See, e.g., Bowman v. City of Indianapolis,* 133 F.3d 513, 518 (7th Cir.1998); *Lawyers Title Ins. v. Pokraka,* 595 N.E.2d 244, 249 (Ind.1992); *Plymale v. Upright,* 419 N.E.2d 756, 760 (Ind.Ct.App.1981). As a general rule, a misstatement of law may not be the basis for a fraud action. *See Bowman,* 133 F.3d at 519; *Plymale,* 419 N.E.2d at 763–64. Exceptions exist for misrepresentations of law that include express or implied misrepresentations of fact, *see Bowman,* 133 F.3d at 519; *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 319–20 (Ind.Ct.App.1991); where the one making the misrepresentation of law is an attorney or claims some special legal knowledge, thereby inducing reliance, *see id.;* where the misrepresentation relates to the law of a foreign jurisdiction, *see id.;* and where there is a special relationship of trust and confidence between the parties. *See Bowman,* 133 F.3d at 519; *Peoples Trust Bank v. Braun,* 443 N.E.2d 875, 879 (Ind.Ct.App. 1983). Under this last exception, the party who made the alleged misrepresentation must have superiority or influence over a dependent, weaker party. *See Hunter v. Hunter,* 152 Ind.App. 365, 283 N.E.2d 775, 779 (1972), *clarified by* 156 Ind.App. 187, 295 N.E.2d 834 (1973.)

 Ms. Hanson's alleged misrepresentations are misrepresentations of Dr. Spolnik's legal rights under his disability policies; thus, they are misrepresentations of law. Dr. Spolnik has not shown the applicability of any of the exceptions to the general rule stated above. Indeed, he has not even attempted to argue that the alleged misrepresentations come within any exception to the general rule. Suffice to say that the alleged misrepresentations do not include express or implied misrepresentations of fact; Ms. Hanson is not an attorney and there is no evidence she claimed some special legal knowledge, thereby inducing Dr. Spolnik's reliance on her misrepresentations; the misrepresentations do not relate to a law of a foreign jurisdiction and, despite their marriage relationship, there is no evidence of the requisite special relationship of trust and confidence between Dr. Spolnik and Ms. Hanson. See *Hunter,* 283 N.E.2d at 779 (existence of confidential relationship depends on specific facts such as whether

one party has superiority, influence, or inequality over a dependent or weak party).[3] Regarding their relationship, there is no evidence to support a finding that Ms. Hanson was the dominant or superior party or that Dr. Spolnik was a dependent or weaker party of their relationship. Therefore, Dr. Spolnik's claim of fraud based on the alleged misrepresentations made by Ms. Hanson are not actionable.

In Plaintiff's Response to Statement of Material Facts (as well as his proposed amended response), Dr. Spolnik claims that his fraud claim also is based upon Guardian's silence and ratification of Ms. Hanson's misrepresentations. (*See* Pl.'s Resp. to Statement of Material Facts ¶¶ 15, 16.) None of the record materials cited in support, however, establish silence or ratification by Guardian of Ms. Hanson's misrepresentations. (*See* Spolnik Dep. at 117–18; Kevin Bell Dep. at 41, 97–100, Exs. 7–9.)[4] Even if they did, the misrepresentation allegedly ratified is a misrepresentation of law. There being no showing of an exception to the general rule, the alleged ratification of a misrepresentation of law cannot serve as a basis for Dr. Spolnik's fraud claim.

## IV. Motion to Amend Plaintiff's Complaint for Damages

With this motion, Plaintiff seeks to amend his Complaint to add a claim of forgery and scheme to defraud against the Defendant. These new claims are based on an alleged forgery of the Endorsement, Guardian's alleged failure to deliver copies of the disability policies to Dr. Spolnik and failure to disclose that the policy "could not be canceled," and a misappropriated life insurance policy loan. The Defendant opposes the motion.

Once an answer to a complaint has been served, a plaintiff may amend his complaint "only by leave of court or by written consent of the adverse party ...." FED. R. CIV. P. 15(a). Rule 15(a) states that "leave shall be freely given when justice so requires ...." FED. R. CIV. P. 15(a); but, "leave to amend is 'inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *Feldman v. American Mem. Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir.1999) (quoting *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir.1992)); *see Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Leave may be denied due to delay, but the delay must unduly prejudice the opposing party. *See Doherty v. Davy Songer, Inc.*, 195 F.3d 919, 922, 927 (7th Cir.1999) (remanding for district court to consider whether proposed amendment seeking attorneys' fees allowed by a contractual provision would unduly prejudice nonmovant). In deciding whether to grant leave to amend, the court should consider whether "a plain-

---

**3.** During Dr. Spolnik's deposition, he was asked whether he was claiming Ms. Hanson had "any sort of specialized knowledge regarding insurance that you didn't have?" (Spolnik Dep. at 289.) He answered, "Yes, she bragged about how great her disability—this was her big thing. This is what she knew. Her other area was whole life." (*Id.* at 289.) Then he was asked: "So you are contending that there is special information about insurance that you didn't know that she did?" (*Id.*) Dr. Spolnik responded:

> I don't understand. Just a second. Let's back up. I'm not an insurance agent. I don't know anything more than—she told me, "You need more insurance," with the

policies, as I testified before, I bought insurance from her. If I could do my own legal work, I would do it.

(*Id.*) This testimony does not establish that Ms. Hanson herself claimed any specialized insurance knowledge, but rather, that Dr. Spolnik claimed she had such knowledge. Thus, this testimony is insufficient to bring Ms. Hanson's alleged misrepresentations within an exception to the general rule that misrepresentations of law are not actionable in fraud.

**4.** Page 80 of Mr. Bell's deposition is also cited, but this page was not provided to the court along with Plaintiff's evidentiary submissions. It is thus disregarded.

tiff has sought leave to amend after the defendant filed a successful motion for summary judgment." *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 773–75 (7th Cir. 1995); *see Garner v. Kinnear Mfg. Co.,* 37 F.3d 263, 269–70 (7th Cir.1994) (holding no abuse of discretion in denying two motions to amend after opposing party had moved for summary judgment).

■ Justice does not require that Dr. Spolnik be given leave to amend his Complaint. The timing of the motion for leave is highly suspect. Guardian's summary judgment motion was filed on June 21, 1999; Dr. Spolnik's motion for leave was filed thereafter on September 2, 1999—more than two years after this action was commenced. It is apparent to the court that the motion for leave was filed in response to and in order to circumvent the inevitable outcome of Guardian's summary judgment motion.

Dr. Spolnik offers the following explanation for his failure to file the motion for leave at an earlier date: He only first discovered the potential forgery on the Endorsement—dated 6/22/89—during his deposition on April 15, 1999; he sought to discover certain documents to corroborate his suspicions; Guardian refused to produce the documents, he then moved to compel production; and following the court's denial of his motion to compel on August 20, 1999, he sought an expert's opinion regarding the signature on the Endorsement. This explanation is not persuasive. A copy of the Endorsement was attached to the original Complaint, filed July 25, 1997, so certainly Dr. Spolnik was aware of it at that time if not before. Further, Dr. Spolnik's handwriting expert, Ronald E. Blacklock, relied on a copy of the Endorsement for purposes of his analysis, and Dr. Spolnik has not come forward with any reason why an expert could not have analyzed a copy of the Endorsement long ago.

Dr. Spolnik attempts to persuade the court that, despite the fact the Endorsement was attached to his initial Complaint, he did not recognize its relevance until after Guardian filed its Second Amended Answer, seeking rescission of the disability policy, and he did not become aware of the forgery on the Endorsement until after his deposition. The argument about the Endorsement's relevance is confusing. Dr. Spolnik's right of action, if any, based on an alleged forgery of the Endorsement is not dependent in any way on any allegations made in the Defendant's Second Amended Answer. The second argument likewise is unpersuasive. A party is presumed to know and recognize his own signature.

Even if Dr. Spolnik could not be presumed to recognize his own signature, he certainly should have known whether or not he did, in fact, authorize the Endorsement—and he should have known this before filing his Complaint. To put it differently, he should have known whether or not he decided to cancel the application to General American for a disability insurance policy for $4,000 monthly indemnity and then made such representations to Guardian. (*See* Endorsement attached to Compl. as part of Ex. 2.) It is noted that the allegations in the proposed Amended Complaint appear to contradict Dr. Spolnik's deposition testimony—he testified that he signed the very Endorsement he now claims was forged. (*See* Spolnik Dep. at 232.) Dr. Spolnik actually testified in his deposition that Ms. Hanson signed his name to another insurance form—a Supplemental Application for Disability Overhead Insurance Expense. (*See id.* at 191–95.)[5] It is concluded that Dr. Spolnik has unduly delayed in asserting the forgery claim.

As for the other claims newly asserted in the proposed Amended Complaint, Dr. Spolnik advances absolutely no reason why

---

**5.** He also testified that he did want the disability overhead insurance, however. (*Id.* at 194.)

these other claims could not have been and were not asserted well before the September 2, 1999, filing of his motion for leave. He fails to do this even after Guardian raised this failure in its consolidated brief opposing the motion for leave to amend. (*See* Guardian's Consolidated Br. In Opp'n To Pl.'s Mot. For Leave To Am. Compl. And Mot. For Leave To Submit New Evidence In Opp'n To Guardian's Mot. For Summ. J. at 5.) [6] Dr. Spolnik offers no persuasive reason why he could not have sought leave to amend his Complaint to add any of the newly asserted theories at an earlier date and before the expiration of the deadline for amendments to the pleadings (January 30, 1998) and expiration of the deadline for filing dispositive motions (June 21, 1999). Inexplicably, he has not sought leave to reopen and extend the time for filing amendments to the pleadings. Dr. Spolnik, however, previously has sought extensions of these deadlines (as did Guardian), and the court has generously granted requested extensions. (*See, e.g.,* Am. Case Management Plan, filed 12/1/98; Entry Vacating Settlement Conf., Trial and Other Dates, and Approving Am. Case Management Plan of 1/4/99; Stipulation filed 3/11/99; Stipulation Regarding Deadline for Filing Dispositive Mots. and Final Lists of Witnesses, Exs., and Contentions filed 5/26/99; Stipulation Regarding Deadline for Filing Final Lists of Witnesses, Exs. and Contentions and Discovery Cutoff filed 6/23/99 and approved 6/25/99.) The failure to seek an extension for purposes of the proposed amended complaint appears to be a product of Dr. Spolnik's attempt to bring new claims into the case only at the eleventh hour.

The failure to timely seek leave to amend unduly prejudices Guardian who is now deprived of the ability to address the new claims in a timely summary judgment motion and whose previously filed summary judgment motion, in the absence of the newly proposed claims, is dispositive of the Complaint. *See, e.g., Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse—Wisconsin, Inc.,* 991 F.2d 1249, 1256–57 (7th Cir.1993) (stating the plaintiff "was of course prejudiced by the delay [by defendant in seeking leave to amend its answer], as the new defenses were not addressed in its timely . . . motion for summary judgment.")

Dr. Spolnik relies on *Textor v. Board of Regents,* 711 F.2d 1387 (7th Cir.1983), and *Chesnut v. St. Louis County, Mo.,* 656 F.2d 343 (8th Cir.1981), in arguing that in the absence of undue prejudice, delay is an insufficient basis for denying leave to amend. The *Textor* court, however, did not rely on delay in denying the motion for leave to amend. *See Textor,* 711 F.2d at 1391. Thus, the *Textor* decision is of little benefit to Dr. Spolnik's position here. In *Chesnut* the plaintiff sought leave to amend the complaint to add a church as a party plaintiff. Before leave was sought, the defendant had assumed the church was a party and did not object to the motion for leave to amend. *See Chesnut,* 656 F.2d at 349. In contrast, in the instant case, Guardian objects to the proposed amendment and has never assumed that the proposed new claims would be part of this case. Thus, *Chesnut* is distinguishable from the instant case. Furthermore, as stated, Guardian would be unduly prejudiced if the proposed amendment were allowed at this stage of the proceedings.

The cases relied upon by Dr. Spolnik in arguing that Guardian has not shown undue prejudice also are distinguishable. *See Hanlin v. Mitchelson,* 794 F.2d 834,

---

**6.** Dr. Spolnik's brief in support of his motion for leave to amend the Complaint, filed in response to Guardian's consolidated brief, was filed on December 1, 1999. Yet, inexplicably, Dr. Spolnik still fails to offer any explanation as to why he could not have raised the newly asserted claims, other than the forgery claim, at a much earlier date. (*See* Pl.'s Br. in Supp. of Mot. for Leave To Amend Compl. and Mot. For Leave to Submit New Evidence In Opp'n to Def.'s Mot. for Summ. J. and Resp. to Def.'s October 18th "Consolidated Br." at 2–3, 5–7 (section entitled, "Spolnik's Motion for Leave to Amend Is Not Untimely").)

840–41 (2nd Cir.1986) (concluding that at time of filing original complaint plaintiff was unaware of the facts supporting the proposed amended claim); *Smith v. Chrysler,* 938 F.Supp. 1406, 1412–13 (S.D.Ind. 1996) (allowing amendment to conform to the evidence where any delay in seeking amendment was due to defendant's prolonged delay of 18 months in producing discovery); *Wielgos v. Commonwealth Edison Co.,* No. 84 C 1222, 1987 WL 7499, at *3 (N.D.Ill. Feb.27, 1987) (granting leave to amend where amendment sought to "simplify and clarify plaintiff's cause of action," eliminated a count and the new allegations added no new claims); *Cuffy v. Getty Refining & Marketing Co.,* 648 F.Supp. 802, 805–07 (D.Del.1986) (allowing amendment that clarified plaintiff's legal theory and added allegations to support original claims); *Agristor Credit Corp. v. Schmidlin,* 601 F.Supp. 1307, 1314–15 (D.Or.1985) (granting leave to amend where new claim regarding adequacy of warranty was related to prior allegations that product was defective; in a conclusory fashion the court decided an amendment would not be unduly prejudicial); *Jones v. Board of Trustees,* No. 83 C 9344, 1985 WL 3610, at *2–3 (N.D.Ill. Nov.4, 1985) (allowing *pro se* plaintiff to file revised motion for leave to amend complaint; leave to amend was not granted in this decision).[7]

Dr. Spolnik is and throughout this litigation has been represented by competent counsel. With the proposed amendment, he seeks to add not only new allegations and theories, but also new claims. Dr. Spolnik certainly was aware of the Endorsement when the original Complaint was filed and should have known whether his signature was affixed to it or not. Dr. Spolnik's delay in seeking leave to amend is not attributable to any prolonged delay by Guardian in discovery. Even if these cases were not factually inapposite, all but one are district court cases and the one is not a Seventh Circuit decision, so they are not controlling authority anyway.

Dr. Spolnik cites to *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir.1979), as authority for the proposition that a party is free to move for leave to amend at any time, even after the opposing party has filed a summary judgment motion. In *Verhein,* as in this case, the plaintiff sought leave to amend its complaint in direct response to the defendant's motion for summary judgment. Leave was denied by the district court, and the Seventh Circuit affirmed. *See id.* at 1063–64. Dr. Spolnik points out factual distinctions between *Verhein* and the instant case in an effort to distinguish the former, but there are two other significant differences that he fails to acknowledge: undue delay and futility of amendment, discussed below.

The futility of the proposed amendment appears to be another reason why leave to amend should be denied. The proposed amended claims, like the original claim for fraud, appear to be barred by the applicable statute of limitations.

■ Dr. Spolnik contends that his action arises out of a written contract so that the applicable limitations period is established by Indiana Code § 34–11–2–11, which is ten years. He cites *Panos v. Perchez,* 546 N.E.2d 1253 (Ind.App.1989), and *Ayers v. State Farm Mut. Auto. Ins. Co.,* 558 N.E.2d 831 (Ind.App.1990), in support. Given the Complaint's allegations, however, Guardian's liability, if any, arises not from a breach of any promise set forth in the insurance contracts, but rather, because Ms. Hanson made false representations to him about his entitlement to benefits under Guardian's policies. That Guardian paid the disability benefits which Dr. Spolnik requested when he submitted his disability claim is not disputed.[8]

7. It is noted that the *Jones* court allowed the defendant in its response to the revised motion for leave to note the effect, if any, the proposed amended complaint would have on its pending summary judgment motion. *See id.* at *3.

8. It is undisputed that when Dr. Spolnik submitted his claim for disability benefits to

■ Dr. Spolnik next argues that the statute of limitations for fraud actions, IND. CODE § 34–1–2–1(4), which provides for a 6 year limitations period, should govern this action. This argument is unavailing. Dr. Spolnik cites *Corey v. Bache & Co.*, 355 F.Supp. 1123 (S.D.W.Va. 1973), to support his claim that the six year limitations applies, but the court applied a two year limitations rather than the six year limitations applicable for common law fraud. *Id.* at 1125–26. He also relies on *Wells v. Stone City Bank*, 691 N.E.2d 1246 (Ind.Ct.App.1998), *trans. denied*, which applied the six year limitations period to a claim which arose from fraud or breach of an oral contract. *Id.* at 1250. The plaintiff alleged that the defendant bank wrongfully dishonored checks written on his account with the bank. The trial court applied the two year limitation applicable for injuries to person or character and injuries to personal property. *Id.* at 1248. Relying in significant part on the Indiana Supreme Court's decision in *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244 (Ind.1992), the *Wells* court held the six year limitations for actions on unwritten contracts and for relief against frauds should apply and reversed the trial court. *See Wells*, 691 N.E.2d at 1249–50.

■ In a subsequent case, the Indiana court of appeals interpreted *Lawyers Title* as limited to its facts and applied the two year limitations period applicable for injuries to the person. *See Schuman v. Kobets*, 698 N.E.2d 375, 378 and n. 2 (Ind.Ct. App.1998), *trans. granted, opinion vacated by*, 714 N.E.2d 163 (Ind.), and *aff'd in part and rev'd on other grounds*, 716 N.E.2d 355 (Ind.1999). In this court's view, *Schuman* is more persuasive than *Wells*. As the *Schuman* court noted, the alleged injury in *Lawyers Title* was an injury to an intangible property right—the priority of a

mortgage. *See id.* at 378 n. 2. That is unlike the injury alleged in *Schuman* (injury to the person) or the instant case (injury to a tangible property right). The *Schuman* case reached the Indiana Supreme Court, and the Court summarily affirmed the application of the two year limitation to the claims for personal injury. *See Schuman*, 716 N.E.2d at 356. The Indiana Supreme Court would be apt to follow *Schuman* rather than *Wells* or *Lawyers Title* and conclude that the two year limitations period applicable to injuries to personal property governed Dr. Spolnik's fraud claim and claims of forgery and scheme to defraud.[9] For statute of limitations purposes, the forgery, scheme to defraud, and fraud claims arising out of a fiduciary relationship should be treated as claims for a breach of a fiduciary duty. *See O.K. Sand & Gravel, Inc. v. Martin Marietta Corp.*, 786 F.Supp. 1442, 1448–49 (S.D.Ind.) (two year statute of limitations applied to fraud claim in fiduciary setting), *modified by* 819 F.Supp. 771, 780 (S.D.Ind. 1992), *aff'd* 36 F.3d 565 (7th Cir.1994); *Whitehouse v. Quinn*, 477 N.E.2d 270, 273–74 (Ind.1985) (holding legal malpractice claim alleging injury to right to bring tort lawsuit was subject to statute of limitations for injuries to personal property); *Shideler v. Dwyer*, 275 Ind. 270, 417 N.E.2d 281, 285–88 (1981) (holding legal malpractice claim alleging loss of right to receive stream of payments under a will subject to statute of limitations for injuries to personal property); *Mack v. American Fletcher Nat'l Bank*, 510 N.E.2d 725, 738–39 (Ind.Ct.App.1987) (holding breach of trust claim alleged injury to personal property and thus subject to two year statute of limitations); *but see Ballard v. Drake's Estate*, 103 Ind.App. 143, 5 N.E.2d 671, 675 (1937) (applying six year limitations

Guardian, he only requested partial benefits under the disability policy and did not request benefits under the business overhead policy. Guardian paid the requested benefits. Dr. Spolnik did not request total disability benefits under the disability policy and did not apply for benefits under the business policy

for the period September 1992 through August 1995.

9. This provides another reason why Guardian is entitled to summary judgment on the Complaint.

period to claim of constructive trust where trustee was guilty of fraud).

Dr. Spolnik's protestations aside, his claims do arise out of a fiduciary relationship between Ms. Hanson and Dr. Spolnik. She was his agent. *See, e.g., American Family Mut. Ins. v. Dye,* 634 N.E.2d 844, 847 (Ind.Ct.App.1994) (stating that an insurance agent who procures insurance for another is the agent of the insured), *trans. denied.* Indeed, during his deposition Dr. Spolnik repeatedly referred to Ms. Hanson as his "agent." (Spolnik Dep. at 117, 154, 189–90, 453–54). Dr. Spolnik provides no authority to support his implicit assumption that Ms. Hanson could not be both his agent and Guardian's employee and agent. Thus, the applicable statute of limitations is Indiana Code § 34–11–2–4, which sets a limitations period of two years.

The statute of limitations began to run when Dr. Spolnik "knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *UNR–Rohn, Inc. v. Summit Bank,* 687 N.E.2d 235, 240 (Ind.Ct.App. 1997), *trans. denied.* Dr. Spolnik knew or in the exercise of ordinary diligence could have discovered the alleged forgery in September 1992, when he submitted his disability claims under policy no. G–616655, or, at the very latest, in April or May of 1995, when he first exercised the future option increase rider. Similarly, at that later time he knew or with the exercise of ordinary diligence could have known of the facts supporting his claim for scheme to defraud. Thus, the proposed new claims would be barred by the applicable statute of limitations. The proposed amendment therefore would be futile.

In his response brief, Dr. Spolnik points out that his motion for leave to amend is his first such motion and that Guardian has been granted leave to amend on two separate occasions. But leave to amend is not a tit for tat. The circumstances surrounding Guardian's motions for leave to amend were quite different than those surrounding Dr. Spolnik's motion—indeed, one of Guardian's motions was an agreed motion. (*See* Resp. to Pl.'s Mot. to Dismiss and Agreed Mot. for Leave to Am. Answer, filed 7/9/99.) The mere fact that Guardian has been granted leave to amend, even twice granted such leave, does not entitle Dr. Spolnik to leave to amend. The court must evaluate each motion for leave to amend the pleadings on its own merits. This it has done and found Dr. Spolnik's motion for leave to amend wanting. Accordingly, the court finds that Dr. Spolnik's motion for leave to amend the complaint should be **DENIED**.

## V. Motion to Amend Plaintiff's Response To Statement of Material Facts

The proposed amended response to Guardian's statement of material facts would add paragraphs 67–71, with supporting citations to the affidavit of Ronald E. Blacklock, Plaintiff's Affidavit, and the proposed Amended Complaint. Nothing contained in these additional paragraphs or the supporting materials would create a genuine issue of material fact as to whether Ms. Hanson's alleged misrepresentations were misrepresentations of law or whether any exception to the general rule requiring misrepresentations of fact would apply. Thus, even if the proposed amendment were allowed, the court's ruling on Guardian's motion for summary judgment would be the same. Dr. Spolnik's motion to amend his response to Guardian's Statement of Material Facts is therefore **DENIED**.

## VI. Conclusion

For the foregoing reasons, the Plaintiff's Motion to Dismiss Counter–Claim (regarding counter-claim of overpayment) is **DENIED**; Plaintiff's Motion to Dismiss (regarding counter-claims/defenses of fraud and/or mutual mistake of fact seeking rescission and/or reformation) is **DENIED AS MOOT**; Motion to Amend Plaintiff's Complaint for Damages is **DENIED**; Motion to Amend Plaintiff's Response to

Statement of Material Facts and Include Affidavit of Ronald E. Blacklock, Plaintiff's Affidavit and Plaintiff's Amended Complaint As Additional Evidence in Response to Defendant's Motion for Summary Judgment is **DENIED;** and Guardian's Motion for Summary Judgment is **GRANTED.**

As is obvious, this Entry does not dispose of all claims—Guardian's counterclaims remain. The entry of final judgment awaits the disposition of the remaining claims.